IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHARON MICHELE SMITH,          : Civil No. 1:25-CV-1287
                               :
    Plaintiff,                 :
                               :
        v.                     :
                               : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,               :
Commissioner of Social Security, :
                               :
    Defendant.                 :

MEMORANDUM OPINION

I.    Introduction

Sharon Smith filed an application under Title II of the Social Security Act for disability benefits on July 29, 2019. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Smith was not disabled from her alleged onset of disability, July 15, 2019, through the date of the ALJ's decision, August 28, 2020.[1]

Smith appealed to this court, and the Commissioner agreed to a remand of the matter for further consideration.[2] The Appeals Council's remand order specifically instructed the ALJ to consider Smith's mental

---

[1] Tr. 12-29.
[2] Tr. 1154-55; *Smith v. Kijakazi*, Civ. No. 3:21-CV-370.

impairments and any impact those impairments have on her ability to perform her past relevant work.[3]  Following a second hearing, the ALJ again found that Smith could perform her past work and was not disabled.[4]

Smith now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[5] we conclude that substantial evidence supports the ALJ's findings in this case.  Therefore, we will affirm the decision of the Commissioner denying this claim.

---

[3] Tr. 1160-61.
[4] Tr. 1028-48.
[5] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

## II.   Statement of Facts and of the Case[6]

Sharon Smith filed for disability benefits, alleging disability due to anxiety, panic attacks, and depression, as well as several physical impairments.[7]  Smith was 60 years old at the time of her alleged onset of disability, placing her in the category of closely approaching retirement age, she had at least a high school education, and she had past work as an order clerk.[8]

Smith and a Vocational Expert ("VE") both appeared and testified at the initial hearing before the ALJ.[9]  Smith testified that she suffered from severe and uncontrollable panic attacks, and that she treated with medication managed by her primary care doctor.[10]  She stated that she avoided leaving her home, and that her panic attacks affect her ability to

---

[6] We will forego our usual summary of the plaintiff's medical records, as the plaintiff's appeal focuses only on her mental impairments and does not contest the ALJ's findings regarding her mild limitations from those impairments (Doc. 9 at 2), except that the ALJ failed to include limitations from these impairments in her residual functional capacity ("RFC") assessment.

[7] Tr. 60-61.

[8] Tr. 43, 60, 1047.

[9] Tr. 37-59.

[10] Tr. 44, 47-48, 50.

concentrate and focus.[11]   The VE testified that a restriction to only occasional interaction with the public would preclude the plaintiff's past work as a customer clerk.[12]   At the second hearing on remand, Smith reported that she still experienced four to five panic attacks per week, that she suffered from anxiety and depression, and that she stopped shopping in stores because of her panic attacks.[13]   She further reported that she was working part time as a tax collector at that time, which required no direct customer contact.[14]   The VE testified that Smith's past work as a customer clerk was semiskilled and would be precluded if it required face-to-face contact with others.[15]

Following the second hearing, on March 25, 2024, the ALJ issued a decision denying Smith's application for disability benefits.[16]   The ALJ first concluded that Smith had not engaged in substantial gainful activity since her alleged onset of disability, July 15, 2019.[17]   At Step 2 of the

---

[11] Tr. 50-51.
[12] Tr. 56-57.
[13] Tr. 1073-74, 1077-79.
[14] Tr. 1074-75.
[15] Tr. 1084, 1088-89.
[16] Tr. 1028-48.
[17] Tr. 1031.

sequential analysis that governs disability claims, the ALJ found that Smith's mental health impairments of generalized anxiety disorder, panic disorder, and major depressive disorder were nonsevere.[18]

In making this determination, the ALJ recounted the administrative record, which indicated that Smith had no mental health treatment other than medication management from 2020 until July of 2023 despite receiving a referral to a psychologist.[19]  The ALJ discussed the mental status findings during the relevant period, which showed some findings of an anxious mood but were otherwise generally unremarkable.[20]  The ALJ also discussed later treatment records that indicated Smith was doing well with medical marijuana and using breathing techniques to get through her panic attacks.[21]  Thus, in assessing the paragraph "B" criteria, the ALJ found no limitation in interacting with others and only mild limitations in the other three areas of mental functioning, relying on these medical records as well as the

---

[18] Tr. 1033-34.
[19] Tr. 1033.
[20] *Id.*
[21] *Id.*

5

opinion evidence establishing only mild limitations in these areas.[22]

Specifically, the ALJ found that the evidence did not support additional

limitations from these nonsevere mental health impairments in the

RFC.[23]

> Between Steps 3 and 4, the ALJ then concluded that Smith:
>
> [H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is capable of occasional balancing, kneeling, crouching, crawling, stooping, and climbing of ramps and stairs, but never climbing of ladders, ropes, or scaffolds. The claimant can occasionally push/pull with her lower extremities, including operation of foot controls, and frequently push/pull with her right upper extremity, including the use of hand levers. She is capable of overhead reaching and frequent lateral and forward reaching with her right upper extremity. The claimant is limited to frequent exposure to vibrations and hazards, including moving machinery and unprotected heights.[24]

In reaching this RFC determination, the ALJ considered the

objective medical record detailed above, the medical opinion evidence,

and Smith's reported symptoms.  With respect to the medical opinion

evidence regarding Smith's mental health impairments, the ALJ

---

[22] Tr. 1034-35.
[23] Tr. 1035.
[24] Tr. 1038.

considered the consultative opinion of Dr. Cole and found it partially persuasive.[25] Dr. Cole opined in September of 2019 that Smith was mildly limited in her ability to understand, remember, and carry out complex instructions, and that she was moderately limited in interacting with the public.[26] The ALJ noted that Dr. Cole's mild limitations were supported by the record and his own examination, and were consistent with the other medical opinions regarding Smith's mental health impairments.[27] However, the ALJ explicitly found the moderate limitation in interaction with others less persuasive, as the record indicated mostly normal mental status findings, that Smith's anxiety and depression were well managed with medications, and that she engaged in activities, such as being a treasurer at her church, that indicated she could interact with others despite her impairments.[28]

The ALJ found the opinions of Drs. Murphy and Timchack, the state agency consultants, persuasive.[29] These providers found that

---

[25] Tr. 1046.
[26] Tr. 912-13.
[27] *Id.*
[28] *Id.*
[29] Tr. 1046-47.

Smith's mental health impairments were nonsevere and resulted in only mild limitations in three of the four mental functioning areas and no limitations in interacting with others.[30]  The ALJ reasoned that these findings were consistent with and supported by the record, which indicated mostly unremarkable mental status findings through the relevant period.[31]  The ALJ also found that these opinions were supported by Dr. Cole's examination findings of an anxious mood but cooperative demeanor and normal motor behavior and eye contact.[32]

With respect to Smith's symptoms, the ALJ ultimately found Smith's testimony to be inconsistent with the objective clinical findings.[33] The ALJ recounted Smith's testimony regarding her depression, anxiety, and panic attacks, and contrasted her testimony with the objective mental status findings that Smith had normal insight and judgment, normal eye contact and motor behavior, intact thought content and attention, and findings of an anxious mood.[34]  The ALJ also discussed the

---

[30] Tr. 65-66, 80-81.
[31] *Id.*
[32] Tr. 1047.
[33] Tr. 1034-35.
[34] *Id.*

8

consultative examination findings, which indicated only moderately impaired attention, good insight and judgment, and mostly intact memory skills.[35]  Ultimately, the ALJ determined that Smith was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that Smith could perform her past work as an order clerk as it is generally performed.[36]  The ALJ utilized the VE testimony, which indicated the position was a sedentary, semiskilled position, and that the job would not require face-to-face interaction.[37]  The VE also testified that an individual with Smith's limitations, as set forth in the RFC, could perform this job as generally performed.[38]  Accordingly, the ALJ found that Smith had not met the stringent standard prescribed for disability benefits and denied her claim.[39]

This appeal followed.  On appeal, Smith argues that the ALJ's decision is not supported by substantial evidence because the RFC

---

[35] *Id.*
[36] Tr. 1047.
[37] Tr. 1047-48.
[38] Tr. 1048, 1084-89.
[39] Tr. 1048.

determination failed to account for her mild mental health limitations.[40]

She further contends that the decision failed to comply with the Appeals

Council's remand order.[41]  This case is fully briefed and is therefore ripe

for resolution.  For the reasons set forth below, we will affirm the decision

of the Commissioner.

## III.    Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits

is limited to the question of whether the findings of the final decision-

maker are supported by substantial evidence in the record.[42]  Substantial

evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."[43]    Substantial evidence means less

than a preponderance of the evidence but more than a mere scintilla.[44]

---

[40] Doc. 7 at 4-12.

[41] *Id.* at 13-15.

[42] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[43] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[44] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[45]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[46]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[47]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[48]  Under this standard, we must look to the existing administrative record to determine if there is "'sufficient

---

[45] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[46] Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

[47] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

[48] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

evidence' to support the agency's factual determinations."[49]  Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[50]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[51]  Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must

---

[49] Id.

[50] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[51] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

articulate the reasons for his decision.[52]  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[53]   Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[54]

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[55]  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous

---

[52] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[53] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[54] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).
[55] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

work or "any other substantial gainful work which exists in the national economy."[56]   To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[57]

In making this determination, the ALJ follows a five-step evaluation.[58]   The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[59]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her

---

[56]   42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[57] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[58] 20 C.F.R. §§404.1520(a), 416.920(a).
[59]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

impairment(s)."[60] In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[61] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[62]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[63] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[64]

---

[60] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[61] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[62] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[63] *Mason*, 994 F.2d at 1064.

[64] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[65]   Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[66]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected

---

[65] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[66] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

16

the medical opinion based upon an assessment of other evidence.[67] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[68] Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[69]

C. <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[70] Judged against this deferential

---

[67] *Biller*, 962 F. Supp. 2d at 778–79.

[68] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

[69] *Burns,* 312 F.3d 113.

[70] *Biestek*, 139 S. Ct. at 1154.

standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Smith's primary argument on appeal is that the ALJ failed to provide for any limitations to account for her mild limitations in mental functioning.  She contends that, because the ALJ found mild limitations in certain areas of functioning, the ALJ was required to include additional limitations in the RFC assessment.[71]  We disagree.

Curiously, the plaintiff relies on a host of out-of-circuit caselaw, as well as some unpublished caselaw from this circuit, to support her argument that the ALJ was required to include additional limitations in the RFC assessment for her nonsevere mental health impairments.[72] The plaintiff cites to *Wells v. Colvin*,[73] a Tenth Circuit decision, and argues that a narrative discussion of the plaintiff's nonsevere impairments is required.[74]   But noticeably absent from the plaintiff's briefing is any discussion of more recent binding caselaw in this circuit.

---

[71] Doc. 7 at 7-8.

[72] *See* Doc. 7 at 7-10.

[73] *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013).

[74] Doc. 7 at 7-10.

Indeed, in *Hess v. Commissioner of Social Security*, the Third Circuit explained that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three."[75] Additionally, while "steps two and three are important to the ALJ's statement of a claim[,] [they] do not require the use of any particular language."[76] Rather, the ALJ's findings "need only be 'adequately conveyed' in the ALJ's statement of the limitation, not recited verbatim."[77] Thus, courts in this circuit have affirmed ALJ decisions that choose not to incorporate additional limitations from mild mental impairments so long as the ALJ provided a rationale for his or her decision.[78]

Turning to the instant case, the ALJ explained why she did not include any mental limitations in the plaintiff's RFC. After discussing

---

[75] *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019).

[76] *Id.*

[77] *Id.*

[78] *See e.g.*, *Jennifer J. v. Bisignano*, 2025 WL 1435628, at *7 (E.D. Pa. May 19, 2025) (finding that "following *Hess*, the ALJ was not required to specifically include limitations associated with Jennifer J's mild impairment . . . when reaching his RFC determination."); *Etze v. Kijakazi*, 2023 WL 3689701, at *6 (E.D. Pa. May 26, 2023) (finding an ALJ's discussion of the paragraph "B" criteria sufficient to explain the

Smith's testimony and the medical evidence regarding her mental health impairments, the ALJ found only mild limitations in three areas of mental functioning.[79]  The ALJ then specifically reasoned why the RFC did not account for these mild limitations:

> Records do not indicate any complications nor hospitalizations as a result of these impairments. In addition, there is no longitudinal evidence of any objective deficits correlated or attributable to these conditions. While these conditions are non-severe, the undersigned considered all of the claimant's severe and non-severe impairments in determining the claimant's residual functional capacity, and appropriate exertional, postural, reach, environmental and mental limitations have been included to address the claimant's severe and non-severe impairments. *In doing so, the undersigned does not find that there are any specific restrictions required under the residual functional capacity for the mild limitations under the B criteria.*[80]

Thus, contrary to the plaintiff's assertion, the ALJ specifically referenced the medical findings and explained that she considered the paragraph B

---

failure to include mental health limitations in the RFC); *D.C. v. Comm'r of Soc. Sec.*, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) ("[T]he Commissioner is correct that an RFC assessment does not need to contain an in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild.").

[79] Tr. 1033-34.

[80] Tr. 1035 (emphasis added).

criteria in her RFC consideration, but that she did not find specific restrictions needed to account for the plaintiff's mild mental limitations.[81]  Following *Hess*, this is all that was required of the ALJ. Accordingly, we find that substantial evidence supports the ALJ's decision not to include mental limitations in Smith's RFC.

Given that the ALJ considered all the evidence and adequately explained the decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case.

As a final argument, Smith contends that the ALJ failed to comply with the Appeals Council's remand order.[82]  We note at the outset that the Appeals Council declined to remand the matter, noting that "the [ALJ's] decision complies with the orders of the U.S. District Court and Appeals Council."[83]  But more fundamentally, we agree with the district

---

[81] *Id.*
[82] Doc. 7 at 13-15.
[83] Tr. 1007.

courts that have concluded that we lack the authority to determine whether the ALJ's decision complies with a remand order.  As one court in this district has aptly explained:

> Section 405(g) of the Social Security Act limits judicial review to a particular type of agency action, a "final decision of the Secretary made after a hearing." *Califano v. Sanders*, 430 U.S. 99, 108 (1977) (cited in the Government's brief at 6). Numerous courts in our circuit have relied upon this principle to hold that district courts lack the authority to consider whether an ALJ complied with a remand order of the Appeals Council. *See, e.g., Ford v. Colvin*, 2015 WL 4608136 (D. Del. July 31, 2015); *Pearson v. Colvin*, 2015 WL 9581749 (D.N.J. December 30, 2015); *Scott v. Astrue*, 2007 WL 1725252 (E.D. Pa. June 12, 2007). "The appropriate focus for review is upon the ALJ's final decision, not the prior Appeals Council remand order." *Pearson*, supra at *4.[84]

We find this caselaw persuasive and conclude that we lack the authority to review the Appeals Council order to determine if the ALJ's decision complied with that order.[85]

---

[84] *Kissell v. Berryhill*, 2018 WL 4207746, at *5-6 (M.D. Pa. Sept. 4, 2018).
[85] *See also Mor v. Kajakazi*, 2022 WL 73510, at *5-6 (D.N.J. Jan. 7, 2022) (noting contrary authority but ultimately concluding that the court lacked authority to review the Appeals Council order).

## IV.   <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 7th day of April 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge
